No. 24,292.

FERD PHIPPS, *Appellee*, v. THE CONSOLIDATED FLOUR MILLS COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. SALE—*Flour—Sold Under Certain Brand—Breach of Implied Warranty—Competent Evidence.* In an action by the purchaser of a quantity of flour, sold by the manufacturer under a certain brand, for the recovery of the price paid for it, the issue being whether there was a breach of an implied warranty that it was of the grade and quality usually made and sold under that name, evidence of representations made by the seller's agent at the time of sale as to the character of the flour is competent as tending to show the kind of flour indicated by the designation employed.

2. SAME. Where flour when received after a shipment of 17 days is found to have a bad odor and to be unfit for use, evidence that the sacks in which it came were in perfect condition and were not stained in any way has some tendency to show that when shipped it was in the same condition, and is sufficient to justify submitting to the jury the question whether such was the case.

3. SAME—*Trial.* Various trial rulings are held not to require a reversal.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed March 10, 1923. Affirmed.

*John F. Rhodes,* of Hutchinson, for the appellant.

*J. S. Simmons, Stuart Simmons,* both of Hutchinson, *C. B. Oliver,* and *G. B. Oliver, jr.,* both of Corning, Ark., for the appellee.

The opinion of the court was delivered by

MASON, J.: Ferd Phipps, of Corning, Ark., ordered from the Consolidated Flour Mills Company, of Hutchinson, 125 barrels of Gilt Edge flour, of which it was the manufacturer. The flour was shipped to Phipps, who made an examination of it before taking up the bill of lading, to which a draft for the price was attached. He wired the company that the flour was musty and unfit for food. The company replied saying that if conditions were as stated satisfactory settlement would be made. He then paid for the flour. No settlement of the matter was reached and he brought this action for the amount of his payment. He recovered judgment, and the company appeals.

1. The order for the flour was in writing and included this paragraph:

"Contract not subject to change: That there are no conditions, representations, or warranties, oral or otherwise, and that there shall be no assignment or

cancellation of this contract except as herein stated, and that no agent or representative has authority to modify the printed terms of this contract."

The plaintiff testified that at the time he contracted for the flour the agent of the defendant who took the order told him that "Gilt Edge" was a whole wheat flour of the same grade as "Government" flour, which the plaintiff was then handling; that it was guaranteed to make good biscuit and light bread. The defendant complains of the admission of this evidence on the ground that it tended to vary the written contract. The complaint, if otherwise well founded, is unavailable for several reasons. It does not appear that any objection was made to the evidence at the trial, except in the instance hereinafter noted. The error if any would not constitute a sufficient basis for reversal, because the court gave this instruction:

"There are some allegations of representations made by the said salesman regarding the mode of manufacture, the quality, etc., of the 'Gilt Edge' brand of flour, but these questions are not in issue in this case and will not be considered by you in any manner, as the written contract of sale is controlling and binding upon the parties hereto, it supersedes and takes the place of the salesman's representations and leaves only a question of implied warranty as to quality, as will be more particularly hereinafter explained, whether or not the flour was musty and unfit for food at the time and place of shipment."

Moreover, an instruction was given, which the defendant approves, to the effect that there was an implied warranty of the flour being of a merchantable quality, and reasonably fit for the purposes intended, and therefore that the plaintiff was entitled to recover if the flour shipped was not of the grade and quality usually manufactured and sold under the name of "Gilt Edge," but was of an inferior or poorer quality, or was musty and unfit for human food. The testimony referred to was competent as tending to show by the declarations of the defendant's representative the character of flour usually manufactured and sold under that designation.

2. The plaintiff introduced testimony that the flour, when received at Corning, was musty and unfit for food, that it had a bad smell, and that bread made from it could not be eaten. The defendant complains of this evidence on the ground that it throws no light on the character of the flour when it was shipped from Hutchinson, seventeen days before. Evidence was produced that the sacks containing the flour were not stained so as to show any damage received in transit, but were in perfect condition—were not stained in any way. This had some tendency to show that no change in the flour had taken place in transit, and the fact in that regard was a fair

matter for the determination of the jury. There was no presumption that anything had happened to the flour after its shipment to alter its character, and if that had occurred it seems reasonable to suppose that the appearance of the sacks would have indicated it. The rule that a condition once shown is presumed to continue but not to have existed in the past is not of universal application. Its effect varies with circumstances. A retrospective presumption has been indulged where "the present condition or state of facts is one that would not ordinarily exist unless it had also existed at the time as to which the presumption is invoked." (22 C. J. 92.) See, also, *The State v. Durein,* 70 Kan. 1, 9, 11, 78 Pac. 152.

3. Testimony as to the unpalatable character of bread baked from the flour is said by the defendant to have been hearsay, but the witnesses appear to have spoken of matters within their own knowledge.

An objection is made to the plaintiff's having been allowed to testify, over the defendant's objection, that he would not have bought the flour except for the representations made by the defendant's agent—in other words that he relied upon the representations. The error if any in the admission of this testimony was cured by the instruction already quoted.

The order as originally given called for 100 barrels of "Kansas Best" flour, at $14.55 a barrel, and for only 25 barrels of "Gilt Edge" at $11.50 and $11.80 a barrel, being later changed to 125 barrels of "Gilt Edge." The defendant asserts that the plaintiff says that the same guaranty was put on both brands, and that the statement is incredible. We do not find, however, that the plaintiff made it.

Complaint is made of the overruling of a demurrer to the plaintiff's evidence. The testimony already referred to was sufficient to take the case to the jury. The jury were asked whether the flour when loaded into the car at Hutchinson was (1) musty, (2) had a foreign odor, and (3) was sound and well milled. They answered "yes" to the first two questions and "no" to the third. These findings are attacked as not supported by the evidence. The evidence already outlined afforded sufficient basis for them, for musty flour, having a disagreeable odor and incapable of making edible bread can hardly be regarded as "sound."

The evidence was that the plaintiff paid $1,460 for the flour. The verdict, on which judgment was rendered, was for $1,223.70, a difference which is not explained. The defendant contends that a new

trial should be granted on this account. A verdict for the plaintiff for a less amount than the evidence supports should be set aside at the instance of the defendant where it is obviously the result of a compromise (*Bresler v. McVey*, 82 Kan. 341, 108 Pac. 97) or where it indicates a purpose on the part of the jury to disregard the evidence given and base a finding on mere surmise (*Hollicke v. Railway Co.*, 99 Kan. 261, 161 Pac. 594). Here, however, there is nothing to suggest either of these conditions. The amount inserted in the verdict may have been due to a clerical error or other inadvertence. Moreover, the special findings already referred to settle the vital issue in the case and are practically sufficient in themselves to support a judgment for the plaintiff.

The judgment is affirmed.