No. 29,996.

Gus V. Winston, *Appellee,* v. W. M. McKnab, *Appellant.*

(4 P. 2d 401.)

Opinion filed November 7, 1931.

*James A. McDermott* and *Richard B. McDermott,* both of Winfield, for the appellant.

*Thomas C. Wilson, Henry Lampl, Rupert Teall,* all of Wichita, *L. D. Moore* and *Harry O. Janicke,* both of Winfield, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action to recover $4,664.06, the balance alleged to be due plaintiff from defendant on a specific oral contract for services rendered as an income tax accountant. Defendant pleaded the statute of limitations, denied liability to plaintiff, and averred that he had paid plaintiff for all services rendered. The court held the statute of limitations not applicable, instructed the jury that plaintiff could recover nothing unless he established the contract alleged, but in the event that contract was established plaintiff should recover in accordance therewith. The jury returned a verdict for plaintiff for $2,750. Defendant has appealed and contends, (1) that the court erred in holding the statute of limitations not applicable, and (2) that a new trial should have been granted for the reason that the jury disregarded the court's instructions.

Briefly, the pertinent facts are: Defendant, an oil-well drilling contractor, with other interests, had made a federal income tax return for 1917. Later officials of the internal revenue department made an audit of defendant's business for that year, as a result of

which he was charged with an additional tax. In November, 1922, he employed plaintiff, who had had some experience as an income tax accountant, to go over the audit, recheck his books, and endeavor to have the additional tax abated. Later the government officials checked defendant's income tax returns for the years 1918, 1919, 1920 and 1921 and compiled one audit covering those years, as a result of which defendant was charged with additional taxes. Defendant was informed of this, perhaps early in 1923, and had plaintiff check his business for the years covered by the later audit, with the view of having the additional taxes abated or reduced. As a result of plaintiff's efforts the difference, or saving, to defendant between the additional taxes charged by the government and the taxes finally paid by him was $8,785.01 for the year 1917 and $49,045.89 for the years 1918, 1919, 1920 and 1921. Prior to the bringing of this action defendant had paid plaintiff $4,645.20 on account of his services. There was no substantial controversy with respect to the facts as so far stated.

The contract relied upon by plaintiff as the basis for his action, as his petition was finally amended, was—

". . . that said defendant orally agreed with this plaintiff on the —— day of November, 1922, to pay this plaintiff for his said services a sum equal to twenty (20) per cent of the amount saved to the defendant on his taxes; that thereafter and on the —— day of September, 1926, said agreement for compensation was modified by plaintiff and defendant, being orally agreed between them that the plaintiff's compensation for his work on the tax returns for 1918, 1919, 1920 and 1921 should be twenty (20) per cent of the first twenty-five thousand dollars ($25,000) saved to said defendant, and ten (10) per cent for the second twenty-five thousand dollars ($25,000) saved to said defendant; five (5) per cent for the third twenty-five thousand dollars ($25,000) . . ."

With respect to this contract plaintiff testified that he was first employed by defendant in November, 1922, with respect to the audit and income tax for the year 1917, and the oral agreement was that he was to receive for his services 20 per cent of the amount saved to defendant; that the second audit, covering the years from 1918 to 1921 inclusive, had not been made at that time; that while he was working on the audit for 1917, and sometime in the year 1923, the audit for the years 1918 to 1921, inclusive, was made by the government officials, and at the defendant's request he went to checking that over; that the work on both audits continued, as required, until in September, 1926, when he and defendant had a parol agreement modifying their original contract in such a way

that with respect to the second audit, covering the years 1918 to 1921, inclusive, his compensation should be 20 per cent on the first $25,000 saved, 10 per cent on the second, and 5 per cent on the third. The payment which had been made to him on account of services was made in April, 1928. He further testified that he completed the work on the 1917 audit, and had that closed with the government in April, 1924, although there was some talk by the government officials later, and extending on up to 1927, that this 1917 audit might be reopened. When the evidence disclosed that the work on the 1917 audit was completed in April, 1924, defendant asked the court to apply the three years' statute of limitations to any claim for the services on that audit. The court declined to do so, for the reason that the payment in 1928 could have been applied by plaintiff on that item, if he so desired, in the absence of any agreement to the contrary, and no such agreement was shown. In this the ruling of the court was correct, and for an additional reason —that, as finally pleaded by plaintiff, he had but one contract with defendant, which was later modified to defendant's advantage. A part of the plaintiff's testimony supported those allegations, although his answers to some questions tended to show two separate contracts. The entire work appears not to have been completed until sometime in 1927. This action was filed September 12, 1929, within three years thereafter, and was not barred by the statute of limitations.

On behalf of the defendant the evidence was that there was no agreement for the compensation of plaintiff for his services based upon a percentage of the amount saved; that there was no talk of any percentage basis until in September, 1926, when plaintiff's services were substantially completed, at which time plaintiff proposed compensation on a percentage basis, which proposition was refused by defendant; that their understanding when the work started was that plaintiff was to be paid a reasonable amount for his services, in keeping with the reasonable charges of other persons doing income tax accounting work for similar services; that this understanding was never changed by any subsequent agreement, and that on this basis plaintiff had been fully paid for all services performed. There was also substantial competent evidence on the reasonable compensation for the services performed by plaintiff for defendant which tended to show plaintiff had been fully paid.

The defendant contends that a new trial should have been granted

for the reason that it is clear the jury did not follow the instructions of the court. This point is well taken. It is well established in the law of this state that the instructions given by the court to the jury embody the law which should govern the jury in its deliberations, and when it is clear from the verdict that the jury has disregarded the instructions of the court a new trial should be granted by the trial court, or by this court on appeal. (*Irwin v. Thompson,* 27 Kan. 643; *Ryan v. Tudor,* 31 Kan. 366, 2 Pac. 797; *U. P. Rly. Co. v. Hutchinson,* 40 Kan. 51, 19 Pac. 312; *Railway Co. v. Schroll,* 76 Kan. 572, 92 Pac. 596; *Johnson v. Oil & Gas Co.,* 114 Kan. 519, 522, 220 Pac. 176.)

In the instructions the court set out the claims of plaintiff, including the figures of the amount saved the defendant on taxes claimed by the government, the amount paid plaintiff by defendant, and the balance claimed by plaintiff to be due, all of which was conceded to be correct if plaintiff had the contract which he pleaded and which his testimony tended to show; also set out the contention of defendant, and further instructed the jury:

"The plaintiff in his petition does not rely upon recovery from defendant for what his services were worth. He claims a specific contract, and the burden of proof is upon the plaintiff to prove his specific contract, and before he can recover anything in this action he must prove by the evidence and by a preponderance thereof that he had a contract with the defendant for the services which he performed for the defendant and prior to the performance of such service it was agreed that the defendant would pay to plaintiff 20 per cent of all amounts saved for the tax returns of the year 1917, and 20 per cent on the first $25,000, 10 per cent on the second $25,000, 5 per cent on the third $25,000, and 2½ per cent on all the balance saved for the years 1918, 1919, 1920 and 1921, and that under and by virtue of such contract the amount that he saved to defendant and the amount due therefor. If he has so proven then you should find a verdict for him in such sum as the evidence warrants; if he has failed to prove, then your verdict must be for the defendant."

Other instructions were in harmony with this. It will be observed this instruction took from the jury any verdict in favor of plaintiff upon the theory of *quantum meruit,* or what his services were worth; required the jury to find that the plaintiff had proved the specific contract alleged; it told them if he had failed to prove such contract the verdict must be for defendant. Under these instructions, if the jury found for the plaintiff, there was just one verdict proper for it to return, and that was for the sum of $4,664.06. The jury did not return that verdict, but returned one for $2,750 for plaintiff. It is impossible, from the instructions, to find any basis for this verdict.

Plaintiff argues the jury might have concluded that the statute of limitations applied to any claim for recovery for services with respect to the 1917 audit, and if so, the verdict was not far from what plaintiff would have been entitled to under the later audit. But plaintiff is not in position to so argue. The jury had no basis in the instruction for such a conclusion. While the trial was in progress the court had ruled against defendant's contention of the statute of limitations applying to the 1917 audit, and later had refused an instruction requested by defendant for the jury not to consider the 1917 audit because of the statute of limitations. Under the instructions given the jury had no more right to say that the statute of limitations applied to the 1917 audit than it had to say this statute applied to plaintiff's entire claim.

Counsel for plaintiff argues that the jury must have found that the contract was made as alleged by plaintiff, otherwise it could not have found a verdict in his favor under the court's instructions. To that extent the argument is correct. Plaintiff further argues that defendant is not hurt by a verdict in a less sum than the jury might have found against him, and on this point cites *McClung v. Moore*, 138 Cal. 181, 71 Pac. 98, and allied cases which sustain that view. It is argued that the plaintiff might have complained and had a new trial, but the verdict, being less than plaintiff was entitled to receive if he established the contract, was error of which the defendant could not complain. This reasoning overlooks the fact that a defendant is as much entitled to a fair trial by a jury as is the plaintiff. This question was thoroughly considered and determined by this court in *Bressler v. McVey*, 82 Kan. 341, 108 Pac. 97, where it was held:

"Where the sole question submitted to a jury is whether the plaintiff is entitled to recover upon a contract, and there is no dispute concerning the amount nor any basis for a finding that the defendant owes a less sum than that claimed, a verdict for half the amount should not be received, and if received should be set aside as contrary to the evidence at the instance of either party."

In the opinion it was said:

"If the plaintiff testified truly, the defendant owed him $500; if not, there was no indebtedness. The jury were called upon to determine which condition existed, but instead of doing so they assumed to settle the controversy by allowing one-half of the claim and disallowing the other half, no doubt with the idea that 'splitting the difference' was a fair method of compromising the dispute. But in this they mistook their function. Each litigant, the defendant

no less than the plaintiff, was entitled to an answer to the question the jury were impaneled to determine." (p. 343.)

Authorities are cited sustaining that view, but further quotation from the opinion is not deemed necessary. This rule has been repeatedly and consistently followed by this court. (*Electric Co. v. Brown*, 86 Kan. 903, 905, 122 Pac. 1026; *Hart v. Gerretson Co.*, 91 Kan. 569, 571, 138 Pac. 595; *Brown v. Byers*, 115 Kan. 492, 223 Pac. 477; *Martin Realty Co. v. Garver*, 116 Kan. 689, 229 Pac. 70; *Dutton v. Brown*, 122 Kan. 277, 252 Pac. 207.)

A number of cases collected on this point are found in 31 A. L. R. 1103. Some cases are in accord with the rule contended for by plaintiff, but many decisions from other states follow the rule which has been adopted and adhered to in this state. We believe it to be the sound one and do not care to modify it.

The result is a new trial must be granted. It is so ordered.